**RX DATA CORPORATION, a New York Corporation, Plaintiff-Appellant,**

v.

**DEPARTMENT OF SOCIAL SERVICES, an agency of the State of New York, et al., Defendants-Appellees.**

**No. 700, Docket 81–7604.**

United States Court of Appeals, Second Circuit.

Argued Feb. 19, 1982.

Decided June 23, 1982.

Leonard Horn, New York City (Ira J. Schaefer and Sprung, Felfe, Horn, Lynch & Kramer, New York City, on the brief), for plaintiff-appellant.

Paul Glickman, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen. of the State of N. Y., George D. Zuckerman, Asst. Sol. Gen., and Frederic L. Lieberman, Deputy Asst. Atty. Gen., New York City, on the brief), for defendant-appellee Dept. of Social Services.

David M. Sandgrund, New York City (John V. Marinelli, New York City, on the

brief), for defendant-appellee Bradford Administrative Services, Inc.

Before NEWMAN, CARDAMONE, and WINTER, Circuit Judges.

NEWMAN, Circuit Judge:

On this appeal from the dismissal of a copyright infringement action, we must determine the collateral estoppel and *res judicata* effect of two state court judgments on a federal action for copyright infringement. RX Data Corporation ("RX Data") developed a computerized system and provided computer printouts that were used by New York's Department of Social Services ("NYDSS") to determine the appropriate reimbursement to pharmacists for drugs dispensed under the Medicaid program. The New York Supreme Court invalidated a contract between RX Data and NYDSS, and the New York Court of Claims ruled that RX Data did not have a right to compensation under a theory of *quantum meruit* for performing work most of which was beyond the scope of the first contract. RX Data then brought this federal court action alleging that NYDSS and Bradford Administrative Services Inc. ("Bradford"), the company that processes claims under New York's Medicaid program, infringed RX Data's copyrighted computer tapes and printouts. Pendent state law claims for unfair competition and *quantum meruit* were included. The District Court for the Southern District of New York (Henry F. Werker, Judge) held that the first state court judgment collaterally estopped the copyright infringement action and dismissed the complaint. We conclude that the copyright infringement claim survives the collateral estoppel and *res judicata* effects of the two state court judgments and vacate the District Court's dismissal of that claim and remand for further proceedings. We affirm the dismissal of the pendent state law claims.

## I.

In 1977, NYDSS took steps to revise its system for drug purchase reimbursement to pharmacies under the Medicaid program so that only the Estimated Acquisition Cost ("EAC") of the drugs would be reimbursed. The EAC is an average of the available wholesale prices of a drug in the state. NYDSS contracted with RX Data for assistance in the preparation of a computerized system that would provide monthly price lists of the EACs for 3,500 of the most frequently purchased drugs. The end product of this system was to be a formulary file that would contain various information about each drug and facilitate processing of claims for reimbursement by NYDSS. Under the terms of this first contract, all files and reports provided to NYDSS would become the property of NYDSS. RX Data, however, would be permitted to obtain statutory copyrights for reports and could then charge the public for copies of its lists or computer tapes at rates specified in the contract. Besides the benefits from this exclusive licensing provision, NYDSS agreed to pay RX Data $975.

On February 15, 1978, three drug wholesalers and a professional association brought suit in the Supreme Court of New York against both the Commissioner of NYDSS and RX Data seeking to have the contract declared illegal and its implementation enjoined. *S–P Drug Co. v. Smith*, 96 Misc.2d 305, 409 N.Y.S.2d 161 (Sup.Ct.N.Y. County 1978). The Supreme Court of New York held that the contract was illegal for three reasons. First, giving RX Data exclusive access to price lists and an exclusive right of distribution of the price lists violated New York's Freedom of Information Law, N.Y. Pub. Off. Law §§ 85–90 (McKinney Cum.Supp. 1981–1982), which requires public access to certain information on which governmental decisionmaking is based. The State could neither agree to withhold the drug price data from the public nor grant a private company a right to make a profit by selling such information since pharmacists were entitled to "unimpaired access" to the reimbursable prices allowed by the State. Secondly, the court held that the grant of exclusivity was void under New York's antimonopoly statute, N.Y.Gen.Bus.Law § 340 (McKinney 1968).

Finally, the Court suggested that the contractual arrangement might violate N.Y. State Fin.Law § 174 (McKinney 1974), which at that time required competitive bidding for state purchases over $1,000. Although the specified contract payment was only $975, the exclusive rights given to RX Data were valued at up to one million dollars. The Supreme Court of New York expressed the rationale for its ruling in these terms:

> While it is all well and good for the State to compensate the contractor for the furnishing of service, provided it is done in accordance with the law, this court cannot understand how the State can grant to a private contractor the right to copyright information which is, and should be, in the public domain. Granting such an exclusive right to a private business and permitting it to profit from the right the State confers upon it to use public information is indeed a bargaining away of public property without proper consideration.

96 Misc.2d at 312, 409 N.Y.S.2d at 165. In its order enjoining the carrying out of the contract, the Court expressly permitted NYDSS to "continue to receive and utilize information supplied by RX Data ... without paying compensation therefore except upon a competitive bid contract."

After entering into the first contract but before the ruling of the New York Supreme Court, NYDSS and RX Data entered into negotiations to produce a more sophisticated computerized system and a more comprehensive drug listing that would have permitted NYDSS to have a fully automated drug reimbursement program under Medicaid for the entire state. Under a proposed second contract, RX Data would have been paid $432,000 in the first year for creating the system generating a 20,000-item compilation and for supplying the more comprehensive monthly reports. NYDSS would get "full and exclusive right, title and ownership interest in all software, modifications thereof, and associated documentation." Because of time pressure, RX Data agreed to render some services to NYDSS and Bradford even though the contract still had not been given official approval by New York State. RX Data contends that it gave computer software, tapes, and printouts of formulary files to NYDSS, which NYDSS and Bradford used in the processing of Medicaid claims. When New York then informed RX Data that it would not agree to the contract, RX Data brought suit in the New York Court of Claims for recovery for its uncompensated work, alleging an informal, unexecuted agreement and entitlement under a theory of *quantum meruit.*

The Court of Claims ruled that N.Y. State Fin.Law § 112(2) (McKinney 1974), which then required contracts with the State for more than $1,000 to be approved by the State Comptroller prior to taking effect, precluded state liability to RX Data on the basis of an informal agreement in the absence of approval by the Comptroller. Concerning the claim for *quantum meruit* recovery, the Court of Claims observed, "However inequitable the conduct of the State may be," RX Data had full knowledge that a contract could not be executed without Comptroller approval. "Under such circumstances," the Court of Claims found itself "without jurisdiction to invoke equitable considerations to require the State to pay for the services rendered." And in turning down a request by RX Data to amend its complaint, the Court of Claims found it to be "clear, in any event, that the claimant cannot assert a viable cause of action against the State in law or in equity based upon the facts giving rise to this claim."

Just after filing suit in the Court of Claims, RX Data filed this copyright infringement action in the District Court for the Southern District of New York. RX Data alleges that NYDSS published and distributed to pharmacies lists that were "substantial duplicates" of computer printouts and tapes for which it had obtained copyright registrations. It alleges that Bradford engaged in unfair competition by receiving and using one or more of these lists. RX Data also sought compensation from both NYDSS and Bradford for labor

and services in developing the automated drug pricing system.

## II.

We agree with the District Court's rejection of defendants' challenge to subject matter jurisdiction. 28 U.S.C. § 1338 (1976) gives the district courts exclusive jurisdiction over civil actions "arising under" the copyright laws. As a suit for an infringement remedy, this action falls within a traditional category of claims "arising under" the copyright laws. *See T. B. Harms Co. v. Eliscu*, 339 F.2d 823, 828 (2d Cir. 1964), *cert. denied*, 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965). Defendants correctly point out that even an infringement claim will not invoke federal jurisdiction when the claim is merely incidental to a primary dispute over copyright ownership under state law. *See Simon & Flynn, Inc. v. Time Inc.*, 513 F.2d 832 (2d Cir. 1975) (*per curiam*); *Stepdesign, Inc. v. Research Media, Inc.*, 442 F.Supp. 32 (S.D. N.Y.1977); *Elan Associates, Ltd. v. Quackenbush Music, Ltd.*, 339 F.Supp. 461 (S.D.N. Y.1972); *cf. Luckett v. Delpark, Inc.*, 270 U.S. 496, 502–03, 46 S.Ct. 397, 399, 70 L.Ed. 703 (1926) (patent laws); *see generally* 3 *Nimmer on Copyright* § 12.01[A] (1981). Here, however, defendants do not have any colorable claim of title under contract or state law to the copyrights in the computer tapes or printouts created by RX Data.

Defendants do not contest but in fact rely on the state court rulings that both of the disputed contracts with RX Data never had legal effect. Nor is any mention made in NYDSS's answer of a license or assignment in its favor of RX Data's copyright registrations. The invalidity of the two contracts leaves NYDSS with at most ownership of copyrighted "materials" as a matter of state law and not title to the underlying copyrights.[1] Since there is no real dispute over copyright ownership under state law, this case involves primarily a construction of the Copyright Act and is within the subject matter jurisdiction of the federal courts.[2]

Although we express no view on the ultimate merits of RX Data's claim for copyright infringement, we hold that the claim is not barred by principles of collateral estoppel or *res judicata*.[3] RX Data and NYDSS were co-defendants in the first state court action, *S–P Drug Co. v. Smith*, *supra*, in which the New York State Supreme Court enjoined NYDSS and RX Data from carrying out the terms of their first contract. In such circumstances, where the co-defendants did not actively litigate as adversaries, there can be no *res judicata* effect. 1B *Moore's Federal Practice* ¶ 0.411[2], at 1281 (2d ed. 1980). However, the absence of adversity in this first state court action does not automatically preclude a collateral estoppel effect.[4] *See Restate-*

1. Whether NYDSS has title to the copyrights because they are found to be "works made for hire" under 17 U.S.C. §§ 101, 201(b) (Supp. IV 1980) would be a question of federal law requiring an interpretation of the Copyright Act. *See generally* 1 *Nimmer on Copyright* §§ 5.03[B][2][b], [c] (1981).

2. Defendants suggest that because the tapes and printouts contain only public information regarding drug prices, RX Data has no valid claim of ownership to the copyrights. But this is really a challenge to the copyrightability of compilations of material in the public domain. This is therefore not a dispute over ownership rights under state law but is a dispute requiring interpretation of the federal copyright laws. It should be noted that RX Data makes no claim to a copyright on the *information* in its computer printouts and tapes that defendants claim is in the public domain. Rather, RX Data alleges that defendants have infringed its copyrights in

its expression or compilation of this information. *See* 17 U.S.C. § 103 (Supp. IV 1980); 1 *Nimmer on Copyright* §§ 2.04[B], [C], 2.11 (1981).

3. Traditional principles of preclusion determine the effect of the two prior state court judgments on this federal court action. 28 U.S.C. § 1738 (1976); *Winters v. Lavine*, 574 F.2d 46, 54–56 (2d Cir. 1978); *Siegel v. National Periodical Publications, Inc.*, 508 F.2d 909 (2d Cir. 1974).

4. Under appropriate circumstances prior state court findings can have a collateral estoppel effect on cases within the exclusive jurisdiction of the federal courts. *Abramson v. Pennwood Investment Corp.*, 392 F.2d 759, 762 (2d Cir. 1968) (securities laws); *see Lyons v. Westinghouse Electric Corp.*, 222 F.2d 184 (2d Cir.) (antitrust laws), *cert. denied*, 350 U.S. 825, 76

ment (Second) of the Law of Judgments § 82 & Reporter's Note (Tent. Draft No. 2, 1975); 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4450 (1981). But application of the doctrine of collateral estoppel to any given issue is carefully circumscribed by two key requirements: (1) the issue in the subsequent suit must be identical to the issue actually decided in the prior suit and (2) the determination of the issue in the prior suit must have been necessary and essential to the judgment in that action. *Montana v. United States*, 440 U.S. 147, 153, 157, 99 S.Ct. 970, 973, 975, 59 L.Ed.2d 210 (1979); *Commissioner v. Sunnen*, 333 U.S. 591, 598–602, 68 S.Ct. 715, 719–721, 92 L.Ed. 898 (1948); *Cromwell v. County of Sac*, 94 U.S. 351, 353, 24 L.Ed. 195 (1877); *Winters v. Lavine*, 574 F.2d 46, 56 (2d Cir. 1978); *Neaderland v. Commissioner*, 424 F.2d 639, 641–42 (2d Cir.), *cert. denied*, 400 U.S. 827, 91 S.Ct. 53, 27 L.Ed.2d 56 (1970); 1B *Moore's Federal Practice* ¶ 0.443 (2d ed. 1980).

The District Court ruled that the New York Supreme Court had necessarily determined the validity of the first contract, which granted RX Data the right to copyright its reports. Therefore, the District Court reasoned, the issue of whether RX Data had a valid copyright interest had been definitively decided against RX Data and it could not establish a necessary element of a cause of action for copyright infringement. While we agree with the premise that the validity of the first contract was necessarily decided by the state court, we note that the first contract is not the only possible source of a copyright interest in favor of RX Data. In fact, most of the copyrighted materials at issue were created after the work that was done pursuant to the first contract had already been completed. The state court did not determine whether RX Data had a valid copyright interest, apart from the invalidated contract, by virtue of its authorship of the

materials, *i.e.*, its creation of the particular form in which the data were expressed. The state court extinguished what would have been RX Data's contract-derived ownership of the copyrights, but did not necessarily determine the parties' interests in the copyrights in the absence of the invalidated contract.

Nor does any intermediate determination by the state court en route to its ultimate invalidation of the contract have a collateral estoppel effect on this action. The state court did order that NYDSS "may continue to receive and utilize *information* supplied by RX Data Corp. or any other source of such information, without paying compensation therefor except upon a competitive bid contract." (Emphasis added). But NYDSS's right to receive and use the information (drug prices) in RX Data's reports does not preclude RX Data's claim of copyright in its computer tapes and printouts. RX Data does not claim a copyright in the *information* on its computer printouts and tapes but only in its expression or compilation of this information, *see* 1 *Nimmer on Copyright* §§ 2.04[B], [C], 2.11 (1981). Moreover, use of copyrighted materials by NYDSS, in the absence of copying, would normally not be an infringement. 2 *id.* § 8.01[A]. Defendants also rely on the New York Supreme Court's disapproval of New York's granting "to a private contractor the right to copyright information which is, and should be, in the public domain." But that aspect of the ruling necessarily determines at most only that the underlying factual data (drug prices) were not protectable when the title to the copyright is derived by contract with the State. In any event, RX Data claims only a copyrightable interest in its expression or compilation of the information in the public domain. We conclude that no issue necessary to the determination of the first state court judgment is identical to any issue in this action for copyright infringement.[5] It is

S.Ct. 52, 100 L.Ed. 737 (1955); Note, *The Collateral Estoppel Effect of Prior State Court Findings in Cases Within Exclusive Federal Jurisdiction*, 91 Harv.L.Rev. 1281, 1286–90 (1978).

5. In light of our conclusion, we do not reach the question of whether differences between the proposed second contract (pursuant to which most of the copyrighted materials were developed) and the first contract (which was

apparent that the first state court action likewise has no collateral estoppel effect on the claims for unfair competition and *quantum meruit*.

In the second state court action, *RX Data Corp. v. State of New York*, which was brought in the New York Court of Claims, RX Data Corp. and NYDSS were adverse parties. Principles of *res judicata* would thus normally bar RX Data Corp. from bringing claims based on the same cause of action that could have been brought in the Court of Claims. But an action for copyright infringement lies within the exclusive jurisdiction of the federal courts. 28 U.S.C. § 1338 (1976). Since the Court of Claims could not have heard the claim for copyright infringement, RX Data is not barred from bringing it in federal court. *See Abramson v. Pennwood Investment Corp.*, 392 F.2d 759, 762 (2d Cir. 1968); Note, *The Collateral Estoppel Effect of Prior State Court Findings in Cases Within Exclusive Federal Jurisdiction*, 91 Harv.L.Rev. 1281, 1292 & n.59 (1978). In response to RX Data's request to amend its complaint, the Court of Claims broadly stated that "[RX Data] cannot assert a viable cause of action against the State in law or in equity based upon the facts giving rise to this claim." However, since the copyright infringement claim could not have been asserted in an amended complaint in the Court of Claims, that Court clearly was not referring to the possibility of an action for copyright infringement.

Whether principles of *res judicata* or collateral estoppel bar litigation of the pendent state law claims concerning unfair competition and *quantum meruit* requires further consideration. The Court of Claims fully adjudicated the state law claim for recovery on a theory of quasi-contract, rejecting that claim on the ground that a contract, even if it existed, was not enforceable for lack of approval by the State Comptroller. The Court of Claims appears to have applied this same reasoning to the claim for recovery on a theory of *quantum*

*meruit*, thereby rejecting that claim on the merits. However, in rejecting the *quantum meruit* claim, the Court of Claims also observed that it "lacked jurisdiction to fashion an appropriate remedy," citing cases holding that the Court has only a limited equitable jurisdiction in aid of valid claims at law. *E.g.*, *Psaty v. Duryea*, 306 N.Y. 413, 118 N.E.2d 584 (1954). This aspect of the Court's ruling may have been either a ruling that subject matter jurisdiction was lacking as to the *quantum meruit* claim, or simply a way of expressing the conclusion on the merits that plaintiff cannot secure monetary relief on any state law theory, whether legal or equitable, because of the lack of contract approval by the State Comptroller.

 However the Court of Appeals decision is analyzed, both pendent state law claims are now precluded, though for different reasons. Since the quasi-contract claim was fully adjudicated on its merits in a ruling unaffected by the jurisdictional doubt expressed as to the *quantum meruit* claim, that ruling is *res judicata* as to any cause of action that could have been asserted arising from the same operative facts. Since the unfair competition claim involves the same facts and could have been presented to the Court of Claims, N.Y.Ct.Cl. Act § 9 (McKinney 1963) (jurisdiction to determine torts of state officers or employees), that claim is now barred. The *quantum meruit* claim, as previously noted, was probably rejected on its merits. But even if the Court of Claims rejected that claim in part because of limits upon its subject matter jurisdiction, the claim may not be pursued in the district court. Though a claim is not barred by *res judicata* when dismissed in part for lack of jurisdiction, *see Spatt v. State of New York*, 361 F.Supp. 1048, 1052 (E.D.N.Y.) (three-judge court), *aff'd mem.*, 414 U.S. 1058, 94 S.Ct. 563, 38 L.Ed.2d 465 (1973), the Court of Claims ruling at least collaterally estops plaintiff from reasserting that the Court of Claims can grant him any relief on the *quantum meruit* claim; New

---

the focus of the New York Supreme Court action) constitute a material alteration of the factual and legal context that would have in any event vitiated any collateral estoppel effect

of the first state court judgment. *See Montana v. United States, supra*, 440 U.S. at 158–62, 99 S.Ct. at 976–78. *Commissioner v. Sunnen, supra*, 333 U.S. at 599–601, 68 S.Ct. at 720–721.

York law does not permit plaintiff to secure money damages from the State in any other state court. The combination of these circumstances precludes plaintiff from renewing the claim as a pendent claim in the district court, since in these circumstances it would be totally unwarranted for a federal court to adjudicate a state law claim that may not be pursued in any courts of that state. For these reasons, we uphold the dismissal of both pendent state law claims, which the District Court had dismissed as a matter of discretion, after rejecting the copyright infringement claim. With the pendent claims dismissed against the primary defendant NYDSS, it remains appropriate, as a matter of discretion, to dismiss these claims against co-defendant Bradford.[6]

The District Court's judgment is vacated in part to the extent that it dismissed the claim for copyright infringement, and the case is remanded for further proceedings with respect to that claim. The dismissal of the pendent state law claims for unfair competition and *quantum meruit* is affirmed.

---

**6.** The complaint might be read literally to assert a copyright infringement claim only against NYDSS and not Bradford. Bradford is mentioned only in the second and third causes of action of the complaint, which might be read to be limited to the two pendent state law claims. We leave it for the District Court to decide whether under liberal pleading rules the complaint should be construed as stating a claim for copyright infringement against Bradford, or, if not, whether the complaint should be amended.