780 F.2d 109
 251 U.S.App.D.C. 1
 NIAGARA FRONTIER TARIFF BUREAU, INC., Petitioner,
v.
UNITED STATES of America and Interstate Commerce Commission,
Respondents,
National Small Shipments Traffic Conference et al., National
Industrial Transportation League, and Central and
Southern Motor Freight Traffic
Association, Inc. et al., Intervenors.
 No. 84-1548.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Nov. 18, 1985.
Decided Jan. 7, 1986.
As Amended Jan. 7, 1986.
 
 Bryce Rea, Jr., with whom Patrick McEligot, Washington, D.C., was on the brief, for petitioner.
 Laurence H. Schecker, Atty., I.C.C., and John P. Fonte, Atty., Dept. of Justice, with whom Robert S. Burk, Acting Gen. Counsel, and Ellen D. Hanson, Associate Gen. Counsel, I.C.C., and Robert B. Nicholson and Edward T. Hand, Attys., Dept. of Justice, Washington D.C., were on the brief, for respondents.
 
 
 1
 Paul R. Duke, with whom Richard J. DeSanti, Washington, D.C., was on the brief, for intervenor Motor Carrier Rate Bureaus.
 
 
 2
 Daniel J. Sweeney, Washington, D.C., was on the brief for intervenor National Small Shipments Traffic Conference et al.
 
 
 3
 John F. Donelan, Frederic L. Wood, and Richard D. Fortin, Washington, D.C., were on the brief for intervenor Nat. Indus. Transp. League.
 
 
 4
 Before WRIGHT, EDWARDS, and DAVIS,* Circuit Judges.
 
 
 5
 Opinion for the court per curiam.
 
 PER CURIAM:
 
 6
 We affirm the order of the Interstate Commerce Commission invalidating petitioner's tariffs as violative of the Motor Carrier Act's prohibition of collective ratemaking for "single-line rates." See 49 U.S.C. Sec. 10706(b)(3)(D) (1982). Although the Act's definition of "single-line rate" is not free from ambiguity, see 49 U.S.C. Sec. 10706(b)(1) (1982), its legislative history leaves no doubt that Congress intended to prohibit collective ratemaking for transportation service provided by a single carrier from shipper to consignee. This prohibition applies whether or not other carriers provide the same single-line service at the same rate. See H.R.Rep. No. 1069, 96th Cong., 2d Sess. 27-28 (1980), U.S.Code Cong. & Admin.News 1980, p. 2283; S.Rep. No. 641, 96th Cong., 2d Sess. 13 (1980). See also Western Railroads--Agreement, 358 ICC 662, 667-670 (1978) (interpreting an identical prohibition on collective ratemaking for "single-line rates" in the "4R" Act two years prior to the passage of the Motor Carrier Act); MOTOR CARRIER RATEMAKING STUDY COMM'N, COLLECTIVE RATE-MAKING IN THE TRUCKING INDUSTRY 499 (1983) (supporting this interpretation of "single-line rate" after passage of the Act). Petitioner suggests, however, that the prohibition on single-line rates was merely intended to prevent collective ratemaking for rates that were proposed by a single carrier and where no other carrier provides that service at that rate. As we read petitioner's definition, it would make the prohibition on single-line rates wholly redundant of the provisions of the Act that already allow for "independent action" by a single carrier. See 49 U.S.C. Sec. 10706(b)(3)(B)(ii) (1982). Given the fundamental importance of the Motor Carrier Act's repeal of antitrust immunity for single-line ratemaking, see S.Rep. No. 641, supra, at 13, petitioner's interpretation borders on the frivolous.
 
 
 7
 Affirmed.
 
 
 
 *
 Of the United States Court of Appeals for the Federal Circuit, sitting by designation pursuant to 28 U.S.C. Sec. 291(a) (1982)