**WHIMSICALITY, INC., Plaintiff,**

v.

**RUBIE'S COSTUMES CO., INC., Defendant.**

**No. CV 89–1720.**

United States District Court, E.D. New York.

Sept. 11, 1989.

Virginia R. Richard and Pamela Bradford, Kane, Dalsimer, Sullivan, Kurucz, Eisele and Richard, New York City, for plaintiff.

Andrew S. Langsam, Levisohn, Lerner & Berger, New York City, for defendant.

DEARIE, District Judge.

This matter is before the Court on plaintiff's application for a preliminary injunction. Plaintiff alleges that defendant's production and distribution of certain children's Halloween costumes infringe plaintiff's copyrighted "soft sculpture" designs. Plaintiff also alleges unfair competition in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and state law.

At the close of oral argument, there appearing to be no dispute as to the material facts bearing on the copyright claim, the Court indicated that it would consolidate the instant application with the merits of the case. *See* Fed.R.Civ.P. 65(a)(2). The parties thereafter submitted extensive additional legal memoranda, affidavits and documentary evidence. Defendant also cross-moved to dismiss the complaint.

As described in greater detail below, the Court has resolved the question in this case in favor of the defendant, and on August 18, 1989, issued an order denying plaintiff's application for injunctive relief and granting defendant's motion to dismiss the copyright infringement claim. The Court also directed the parties to proceed with discovery on the unfair competition claims and to appear for a status conference on October 6, 1989 at 9:30 A.M. This opinion sets forth the basis of the Court's decision. *See* Fed.R.Civ.P. 52(a).

FACTS

A. *The Parties*

Plaintiff Whimsicality, Inc. ("Whimsicality"), a Vermont corporation, is a young and to date thriving enterprise. Founded in 1978 by Pierre Couture, its current president, Whimsicality designs, manufactures and sells various home craft items, such as children's apparel, quilts, adult toys and novelties. Whimsicality promotes its products as home-styled and "made in Vermont." Defendant Rubie's Costume Co., Inc. ("Rubie's"), a New York corporation, for over thirty five (35) years has manufactured, designed and marketed a wide range of theatre-related items, including numerous costumes for children and adults, as well as Halloween novelty items, masks, theatre props, and make-up kits. Rubie's gross sales totalled over $30 million in 1988.

B. *The Allegedly Infringed Items*

Since 1985, Whimsicality has distributed a line of items designed by Mr. Couture, which it has described to this Court and to the United States Copyright Office as "soft sculptures." Since 1985, when it introduced the Jack O'Lantern (its first soft sculpture design and one of the six items allegedly infringed by defendant), Whimsicality has enjoyed great success with its soft sculptures. At present, the line consists of 66 different soft sculpture designs. The other five allegedly infringed by defendant are Hippo Ballerina, Spider, Tyrannosaurus Rex ("T–Rex"), Bee and Penguin.

Whimsicality's soft sculpture designs have received substantial publicity[1] and

---

**1.** Over the last two years Whimsicality's designs have been featured in the Chicago Tribune, the Detroit News, the Providence Journal Bulletin, on the cover of New York Magazine, in the trade publications Playthings and Toy and Hob-

are sold nationwide through numerous catalogs, at trade shows, and in several upscale department and specialty stores. Sales of Whimsicality's soft sculpture designs exceeded $1.4 million in 1987 and $2.2 million in 1988. Approximately 80% of the sales of Whimsicality's sculptures occur between the months of March and August, when retailers and wholesalers place their orders for costumes for the upcoming Halloween season.

Whimsicality has secured copyright registrations on each of the six designs.[2] On each application form submitted to the Copyright Office, Whimsicality identified the "nature of the work" it sought to register as "soft sculpture." Similarly, in its papers submitted to this Court, Whimsicality has consistently used only the term soft sculpture, describing Mr. Couture's designs as "original soft sculptures executed in fabric" which are "adaptable for use as costumes, wall hangings or interior decorations." All other written materials mentioning the articles, however, describe them only as costumes. These materials include the numerous catalogues displaying the subject designs, as well as newspaper and trade journal articles profiling the subject designs, and Whimsicality's own promotional literature and order and price sheets.

### C. The Alleged Infringement

During the 1989 National Halloween Show in Chicago, representatives of Whimsicality first discovered what they believed were infringing "knock-off" Halloween costumes—i.e., lower priced, lower quality imitations—of Whimsicality's soft sculpture designs being displayed and offered for sale by Rubie's. Rubie's also displayed and offered for sale the allegedly in-

fringing knock-offs in its fall 1989 catalog. Immediately thereafter Whimsicality's counsel wrote Mr. Marc Beige, president of Rubie's, asserting Whimsicality's copyrights and demanding that Rubie's cease and desist marketing the knock-offs. Rubie's refused, arguing, as it continues to argue to this Court, that Whimsicality's designs are not properly copyrightable.[3]

## DISCUSSION

### I.

### The Copyright Infringement Claim

A *prima facie* case of copyright infringement is established by proof of (i) ownership of a valid copyright and (ii) copying by the alleged infringer. *Eckes v. Card Prices Update*, 736 F.2d 859, 861 (2d Cir. 1984); *Zambito v. Paramount Pictures Corp.*, 613 F.Supp. 1107, 1108, n. 1 (E.D.N. Y.), *aff'd* 788 F.2d 2 (2d Cir.1985). *See also* 3 M. Nimmer, *On Copyright*, § 13.01 (1987).

### A. Validity of Whimsicality's Copyrights

#### 1. Introduction

Whimsicality's ownership of a copyright registration for each of the six designs at issue is *prima facie* evidence of the validity of each copyright and the facts stated in the certificates, including ownership. 17 U.S.C. § 410(c). The presumption of section 410(c), however, may be rebutted. If a copyright claimant failed to disclose fully the nature of its work to the Copyright Office, or if the Copyright Office otherwise lacked a full and fair opportunity to pass upon the question of the work's copyrightability, the copyright certificate's

---

by, and on a nationally telecast edition of ABC Business World News.

**2.** Whimsicality's designs are registered with the Copyright office as follows:

| Design | Registration | Date Issued |
|---|---|---|
| Pumpkin | VA 312 952 | 8/22/88 |
| Hippo Ballerina | VA 148 459 | 4/17/89 |
| Spider | VA 148 458 | 4/17/89 |
| T–Rex | VA 148 460 | 4/17/89 |
| Bee | VA 312 084 | 8/9/88 |
| Penguin | VA 312 085 | 8/9/88 |

**3.** Although some evidence has been submitted bearing on the packaging of the parties' products, alleged representations by Rubie's to consumers concerning the source of its alleged "knock-offs," and other issues relevant to the unfair competition claims, the Court is not deciding those claims today. *See infra* at 1576–1577. Rather, this Court has directed the parties to proceed with discovery, and therefore the Court does not now make any preliminary findings of fact relating to the unfair competition claims.

validity may be questioned. *Past Pluto Productions Corp. v. Dana,* 627 F.Supp. 1435, 1440 & n. 5 (S.D.N.Y.1986).

■ If the claimant's incomplete disclosure was in fact calculated to deceive the Copyright Office, a Court may refuse to enforce the certificate. As one court has stated,

> [t]he knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitute[s] reason for holding the registration invalid and thus incapable of supporting an infringement action ..., or denying enforcement on the ground of unclean hands.

*Russ Berrie & Co., Inc. v. Jerry Elsner Co., Inc.,* 482 F.Supp. 980, 988 (S.D.N.Y. 1980), *cited with approval in Eckes v. Card Prices Update,* 736 F.2d at 861–862. *See also Sandwiches, Inc. v. Wendy's International, Inc.,* 654 F.Supp. 1066, 1071 (E.D.Wis.), *appeal dismissed,* 822 F.2d 707 (7th Cir.1987).

■ Rubie's argues that the copyright registrations in this case are invalid because what Whimsicality identifies to this Court and the Copyright Office as soft sculptures are nothing more than costumes, and therefore intrinsically utilitarian articles which are not copyrightable. Rubie's argues that Whimsicality defrauded the Copyright Office, having secured copyright registrations only because it misidentified the works to the Copyright Office as soft sculptures.[4] Whimsicality's counsel conceded at oral argument that had Whimsicality identified its works as costumes, the Copyright Office would probably have rejected its applications. Whimsicality insists, however, that it has not defrauded the Copyright Office, maintaining that its designs are indeed soft sculptures which are simply adaptable and popular as costumes.

Although the parties disagree as to the proper classification of the articles in question, it is uncontested that in every single piece of promotional literature, Whimsicality describes these very same items only and always as costumes. The uncontroverted evidence also shows that 80% of the sales of the soft sculptures are attributable to demands for Halloween costumes. Thus, it is clear on this record that Whimsicality considers the items to be costumes, promotes them as costumes, and profits principally because consumers purchase them as costumes. Moreover, this Court cannot ignore the fact that the Copyright Office has rejected applications for copyright submitted by Rubie's for one of the allegedly infringing costumes (the Bee), as well as other Rubie's costumes in the past, on the ground that costumes are "wearing apparel" and thus not copyrightable.

In short, the evidence strongly suggests that Whimsicality has not been as forthright with the Copyright Office as it could have been. Its obviously calculated use of the term "soft sculpture," however, does not in this Court's view reach the level of dissembling that would constitute a fraud on the Copyright Office and without more preclude the present infringement claims. Possessed of at least an understandable bias about the uniqueness of its creations, Whimsicality could arguably justify describing them to the Copyright Office as something other than just costumes.

Indeed, the issue of copyright law presented in this case is a difficult one and has understandably sparked a war of words in which *both* parties have embraced certain nomenclature to press their respective points. Indeed, notwithstanding the abundance of tests and the masterful articulation of them by courts and the Copyright Office, reasonable persons may disagree about the copyrightability of costumes. *See National Theme Productions, Inc. v. Jerry B. Beck, Inc.,* 696 F.Supp. 1348 (S.D.Cal.1988), discussed in detail *infra* at 1575. The Court therefore under-

---

4. As part of its application to the Copyright Office, Whimsicality also submitted photographs of the subject articles in which they were displayed on a flat surface, without human models, and without a hint that the items depicted could be worn as costumes without alteration or adaptation. By contrast, in all promotional literature and catalogs containing photographs of the articles, they are always being modelled by children.

takes an analysis of the copyrightability of the allegedly infringed items.

### 2. General Principles.

The Constitution authorizes Congress to "promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const. Art. I § 8. Among the items to which Congress has extended copyright protection are "pictorial, graphic or sculptural works." 17 U.S.C. § 102(a)(5). A "useful article," defined as an "article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information," or "an article that is normally part of a useful article," 17 U.S.C. § 101, is generally not copyrightable.

A useful article may be copyrightable as a pictorial, graphic or sculptural work, however, but

> only to the extent that [the design of the useful article] incorporates pictorial, graphic or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.

*Id.*

A codification of official Copyright Office policy, *Compendium II of Copyright Office Practices* (1984) (the "Compendium")[5] contains provisions which largely track the statutory language but also includes examples and relevant commentary regarding useful articles. For example, according to the Compendium, examples of "useful articles" having intrinsic utilitarian functions and therefore lacking copyrightability, include "automobiles, boats, household appliances, furniture, work tools, *gar-*

*ments* and the like." Compendium § 505.01 (emphasis added).

Section 505.02 of the Compendium provides:

> *Separability test.* Registration of claims to copyright in three-dimensional useful articles can be considered only on the basis of separately identifiable pictorial, graphic, or sculptural features which are capable of independent existence apart from the shape of the useful article. Determination of separability may be made on either a *conceptual* or *physical* basis. (emphasis added)[6]

Section 505.03, especially relevant to this suit, provides:

> *Separability test: conceptual basis.* Conceptual separability means that the pictorial, graphic or sculptural features, while physically inseparable by ordinary means from the utilitarian item, are nevertheless *clearly recognizable* as a pictorial, graphic or sculptural work which can be visualized on paper, for example, or as a free-standing sculpture, as another example, independent of the shape of the useful article, *i.e.*, the artistic features can be imagined separately and independently from the useful article without destroying the basic shape of the useful article. The artistic features and the useful article could both exist side by side and be perceived as fully realized, separate works—one an artistic work and the other a useful article. *Thus, carving on the back of a chair, or pictorial matter engraved on a glass vase, could be considered for registration.* The test of conceptual separability, however, is not met by merely analogizing the general shape of a useful article to works of modern sculpture, since the alledge "artistic features" and the useful

---

5. The Compendium is issued "Under the Copyright Law Which Became Fully Effective on January 1, 1978, Including Title 17 of the United States Code and Amendments Thereto."

6. The notions of conceptual separability and physical separability developed not from the statute but from its legislative history:

> On the other hand, although the shape of an industrial product may be aesthetically satisfying and valuable, the committee's intention is not to offer it copyright protection under the bill. Unless the shape of an automobile, airplane, ladies' dress, food processor, television set, or any other industrial product contains some element that, *physically or conceptually,* can be identified as separable from the utilitarian aspects of that article, the design would not be copyrighted under the bill (emphasis added).

H.R.Rep. No. 1476, at 55, *reprinted in* 1976 U.S.Code Cong. & Admin.News, p. 5668.

article cannot be perceived as having separate, independent existences. The shape of the alleged "artistic features" and of the useful article are one and the same, or differ in minor ways; any differences are de minimis. The mere fact that certain features are nonfunctional or cold have been designed differently is irrelevant under the statutory definition of pictorial, graphic, and sculptural works. Thus, the fact that a lighting fixture might resemble abstract sculpture would not transform the lighting fixture into a copyrightable work. (emphasis added)

Finally, in a Printed Form on Useful Articles distributed by the Copyright Office, the Register of Copyrights states:

> Designs for useful articles, such as vehicular bodies, ... wearing apparel ... and the like are not protected by copyright. However, the design of a useful article is subject to copyright protection to the degree that its pictorial, graphic or sculptural features can be identified as existing independently of the utilitarian object in which they are embodied.

> The line between uncopyrightable works of industrial design and applied art is not always clear. A two-dimensional painting, drawing, or other graphic work is still identifiable when it is printed on or applied to useful articles such as textile fabrics, wallpaper, containers and the like. On the other hand, although the shape of an industrial product may be aesthetically satisfying and valuable, the copyright law does not afford it protection. The designs of some useful objects may be entitled to protection under design patent law ...

Our Court of Appeals, recognizing the difficulty of the conceptual separability principle, recently adopted what it undoubtedly hoped was a clearer articulation of the test, a version first set forth by Professor Denicola in *Applied Art and Industrial Design: A Suggested Approach to Copy-*

*right in Useful Articles,* 67 Minn.L.Rev. 707 (1983). Thus, in this circuit,

> if design elements reflect a merger of aesthetic and functional considerations, the artistic aspects of a work cannot be said to be conceptually separable from the utilitarian elements. Conversely, where design elements can be identified as reflecting the designer's artistic judgment exercised independently of functional influences, conceptual separability exists.

*Brandir International, Inc. v. Cascade Pacific Lumber Co.,* 834 F.2d 1142, 1145 (2d Cir.1987). In evaluating a work under this test, the court is to review evidence relating to both the design process and the nature of the work. *Id.* at 1145–47.

Distilling the amorphous notion of conceptual separability into a handful of manageable propositions is a necessary first step toward determining copyrightability in a particular case. While they hardly light up the world or even map out an easy path toward appropriate resolution, the Compendium and case examples provide some guidance; referencing them and other such concrete examples, this Court can best demonstrate its reasoning.

■ First, it is accepted copyright law that a garden variety article of wearing apparel is intrinsically utilitarian and therefore a noncopyrightable useful article. Equally noncopyrightable are the elaborate designs of the high fashion industry, no matter how admired or aesthetically pleasing they may be. Notwithstanding the fact that aspects of a garment might well reflect a talented designer's artistic judgments, or that one might admire a garment principally for those artistic aspects, the *"ultimate* design," *Brandir,* 834 F.2d at 1147 (emphasis added), of apparel is *"as much* the result of utilitarian pressures as aesthetic choices." *Id.* (emphasis added)." [7]

Second, certain items that are "worn" but are not actually garments, though they

**7.** One additional fact has undoubtedly helped "establish" the noncopyrightability of apparel. As explained by the parties at oral argument, early protectionist economic policy accounts as much as principles of copyright law for the status of apparel under American copyright law. Apparently, apparel was denied copyright protection so the fledgling American fashion industry could with impunity knock-off the expensive creations of the established European designers.

serve utilitarian functions, may be copyrightable. For example, in *Kieselstein–Cord v. Accessories by Pearl, Inc.*, 632 F.2d 989 (2d Cir.1980), our Court of Appeals found ornate belt buckles to be copyrightable because their "primary ornamental aspect[s]" were "conceptually separable from their subsidiary utilitarian function." 632 F.2d at 993. Noting that the buckles could be worn separately as jewelry, that Court later explained that the buckles' artistic elements "were not in any respect required by their utilitarian functions." *Carol Barnhart Inc. v. Economy Cover Corp.*, 773 F.2d 411, 419 (2d Cir.1985). Conceptual separability, and thus copyrightability, was also found to exist in a wearable bear paw slipper in *Animal Fair, Inc. v. Amfesco Industries, Inc.*, 620 F.Supp. 175 (D.Minn.1985), aff'd mem., 794 F.2d 678 (8th Cir.1986), and in animal-shaped children's backpacks in *Act Young Imports, Inc. v. B and E Sales Co., Inc.*, 673 F.Supp. 672 (S.D.N.Y.1987). In both of those cases, the courts concluded that the artistic features of the item in question (the animal shapes) were wholly unrelated to the useful function of those stems.

■ Third, *aspects of* garments may be copyrightable. Returning to the Copyright Office publications (the Compendium and the Printed Form on Useful Articles), a vase is not copyrightable but a pictorial matter engraved on it might be; a chair is not copyrightable, but a carving on the back of it might be; similarly, while an ordinary garment is not copyrightable, a sculpture (of foam, or fabric, for example), or a detailed embroidery, or some other two-dimensional drawing or graphic work, affixed to a portion of the garment, might be copyrightable. Moreover, the existence of the copyrightable engraving on the vase or the copyrightable carving on the chair does not make the entire vase or chair copyrightable. In other words, a copyrightable feature of an item does not entitle the entire item to copyright protection.

■ Fourth, turning to the language of the tests themselves, they reflect the principle that the essence of noncopyrightability is utility—not, of course, utility's mere presence, but its influence on the identifiable artistic elements. Obviously there are many useful objects which also exhibit artistic elements. The objective of conceptual separability analysis is to grant copyright protection to the art that may be within, or a part of, a useful object, but only where it is possible to locate and identify what for lack of a better term can be called "pure" art—i.e., art untainted by utilitarian concerns. In other words, art is protectible under the conceptual separability test only when it can be said that the art came into existence for reasons entirely unrelated to the utilitarian purpose of the useful object (of which the art happens to be an element).

■ In addition, the Copyright Office and the *Brandir* court articulations of the conceptual separability principle both reflect a Congressional decision, essentially a policy choice, to protect art underinclusively; that is, Congress decided that it is better to risk not protecting some art than to grant to all so called art, including art resulting from non-artistic (i.e., utilitarian) considerations, the precious protection and monopoly status of copyright. This judgment also reflects the notion that even the design of purely functional attire involves an element of creativity and therefore, as an expression of the designer, is art in the commonly accepted sense. Thus, as the *Brandir* court stated, when the designer's aesthetic and utilitarian concerns merely *merge*, or when the ultimate design results *as much* from utilitarian *as* aesthetic concerns, protection is denied; protection exists only when the designer's artistic judgment was exercised truly independently of functional influences. Admittedly this test poses a difficult burden for one seeking copyright protection, but the burden is understandable given the policies underlying the copyright laws. In practice, the test requires a finding that the "art" would have resulted even if the designer were not designing the utilitarian object which happens to embody or display his art.

3. The Validity of the Copyrights in the Instant Action.

■ With these principles in mind, the Court turns to the group of articles in

question. First, Whimsicality's soft sculptures, however fanciful, are "useful articles" as that term is understood for copyright purposes. They are not, however, useful merely as garments, whose purpose is simply to clothe the body, or even to clothe the body pleasingly, alluringly, or luxuriously. Their purpose is more specialized; it is to enable the wearer to masquerade, to pretend to be a jack o'lantern or a bee or a spider.

Since the purpose of the soft sculptures is to enable the wearer to masquerade, the artistic elements of each article are not conceptually separable from each article's utilitarian aspects. The artistic features of the various costumes—the elaborate headpieces on the Hippo Ballerina, T-Rex or Jack O'Lantern, for example, or the orange gingham print on the Jack O'Lantern, or the attractive color combinations and facial details on all the costumes—all are influenced by, and indeed advance, the utilitarian purpose of the items, which is to enable the wearer to masquerade. In other words, the artistic, and aesthetically pleasing, aspects of Mr. Couture's designs, in this court's judgment, are inseparable from the utilitarian concern with creating something that the consumer will think resembles a bee or penguin or spider for purposes of masquerading.

The Court does not doubt that Mr. Couture has succeeded in displaying his own particular artistic expressions, but his artistic judgment, in this court's view, was not exercised independently of functional influences, since Mr. Couture knew that while he was expressing the idea of pumpkin or bee or spider, he was doing so at least in part to create a costume a consumer would buy and wear.[8] Thus, the artistic elements of the articles clearly advance their utilitarian function. In short, the designs may be art, but it is an art influenced—not exclusively, but significantly and materially—by utility. It may fairly be said that the artistic elements were without question dominated by utilitarian concerns during the design process and would not have come into being were Mr. Couture not designing the utilitarian objects (costumes) which now embody those elements of art.

■ There is no question that this Court's conclusion would be otherwise were this Court simply to accept Whimsicality's characterization of the articles. The Court acknowledges that a work of art that happens to be worn, or a wearable toy, might be copyrightable. The reality, however, after a careful review of the record and an examination of the articles themselves, belies Whimsicality's arguments, for there is no doubt in this Court that the subject articles are costumes. Whimsicality's studied position that its sculptures just happen to be adaptable as costumes, and just happen to be popular during the Halloween season, but that the articles are equally adaptable as wall hangings or decorations, must be dismissed. Not a single advertisement ever advises the consumer that his costume had such a different destiny. In sum, every indication in the record

8. Indeed, some evidence submitted by *plaintiff* strongly suggests that Mr. Couture was almost exclusively influenced by the utilitarian concern of designing appealing costumes. For example, Plaintiff's Supplemental Exhibit 22, an article from The Times Argus, dated October 29, 1987, reveals Mr. Couture's concerns with his market—the yuppie mothers—and their needs. According to the article's author, Couture stated that a mother feels good sending her child out in one his costumes "because it's what she would make herself." Mr. Couture continued to demonstrate his appreciation of his product's market. He explained that demand is high particularly because Halloween's focus for children has shifted from trick or treating at night to daytime parties, including dress-up days at school, where there is greater pressure to have a high quality costume.

The article also remarks upon the quality of the costumes, noting, *inter alia,* that none has a mask that could interfere with a child's vision. This observation hints to this Court that perhaps even the decision to design the elaborate headpieces may have been influenced by functional considerations, namely, creating the desired full-body costume effect without subjecting the child wearer of the costume to the discomfort, vision impairment or other inconveniences or dangers of a mask.

Finally, Mr. Couture apparently believes his present endeavors are an outgrowth of a childhood pastime: musingly, he notes that "As a kid, I used to work on Halloween costumes weeks in advance."

is that Whimsicality designs, manufactures and markets the sculptures not as works of art that can be worn, but as items principally for masquerade wear.

What little evidence this Court has on the design process—which is relevant in conceptual separability analysis, *see Brandir*, 834 F.2d at 1145–1147—confirms this Court's conclusion about the obvious nature of the works in question. The Court of course has no direct evidence of what was in Mr. Couture's mind on the day he designed the first soft sculpture. But given that the various soft sculptures were designed over time, and in response to the success in the market of the previously designed Couture sculptures, the evidence strongly suggests that Mr. Couture in fact had their use as costumes sufficiently in mind as he designed each successive one so that it can be said that the aesthetic and functional considerations merged during the design process.

As the above indicates, this Court must reject the analysis in *National Theme Productions, Inc. v. Jerry B. Beck, Inc.*, 696 F.Supp. 1348 (S.D.Cal.1988). Beginning with the same general principles discussed in this opinion, the *National Theme* court reasoned that the utilitarian purpose of the Halloween costumes at issue was simply to clothe; accordingly, it quite easily concluded that the costumes were copyrightable because the artistic elements in the costumes "simply do not advance their utilitarian purpose as clothing or accessories," 696 F.Supp. at 1354, and that "the costumes were not ... designed to optimize their function as clothing." *Id.* at 1353. In this Court's view, the *National Theme* court's conceptual separability analysis is flawed because the court failed to assess the artistic elements in light of the costumes' purpose as *masquerade* clothing. Indeed, logically applied, *National Theme* would extend copyright protection and monopoly status to the high fashion designs of the garment industry, contrary to well established case law, Copyright Office and historical precedent.

■■■ Whimsicality presses one final argument that requires brief discussion.

Whimsicality argues that the conceptually separable artistic aspect of each of Mr. Couture's creations is the overall effect—the shape, or silouhette, or three-dimensional impression on the viewer—created by Mr. Couture's particular expression of bee, or pumpkin, or hippopotamus. One could draw line drawings of the whole shape and design of each of the costumes, Whimsicality argues, which would be recognizable as fanciful artistic renditions of a pumkin or spider regardless of what utilitarian object the designs were used to adorn.

Whimsicality relies on a passage from the bear paw slipper case, *Animal Fair Inc. v. Amfesco Industries, Inc.*, in which the court noted that

> ... "one could draw a line drawing of the whole shape and design which would be recognizable as a fanciful artistic rendition of a bear's paw, regardless of what type of functional or utilitarian object it was used to adorn."

620 F.Supp. at 187.

■■■ Whimsicality's analogy, however, misses the mark. Whimsicality is partially correct in that the conceptually separable—and therefore copyrightable—artistic element of a useful article could be its overall shape or the effect of its overall exterior configuration. Such shape, configuration or appearance is deemed conceptually separable, however, *only* when the artistic shape exists *"independent of* the shape of the useful article," Compendium § 505.03 (emphasis added), or when "the artistic features can be imagined separately and independently from the useful article without destroying the basic shape of the useful article." *Id. Cf.* H.R.Rep. No. 1476 at 55, *reprinted in* 1976 U.S.Code Cong. & Admin.News, pp. 5659, 5668, ("although the shape of an industrial product may be aesthetically satisfying and valuable, the committee's intention is not to offer it copyright protection ... unless the shape ... contains some element that, physically or conceptually, can be identified as separable from the utilitarian aspects of that article ..."). In short, the aesthetically very pleasing shapes of Mr. Couture's creations—their fanciful, sometimes lifelike,

sometimes fantastical, rendition of the image of pumpkin, bee, penguin, dinosaur, hippopotamus and spider—are inseparable from the utilitarian function of the objects of which they are a part—to enable the wearer to masquerade as a pumpkin, bee, penguin or the like. *See* Compendium, § 505.03 ("the fact that a lighting fixture might resemble abstract sculpture would not transform the lighting fixture into a copyrightable work"). Thus the artistic shapes of the *costumes*—where shape and appearance are as much a part of function as laces are to shoes—are distinguishable from the artistic shapes of the animals on the children's backpacks in *Act Young Imports*, or the bear-paw shape of the slipper in *Animal Fair*, and clearly not copyrightable.

### B. *Copying and Substantial Similarity*

Having determined that Mr. Couture's creations are not copyrightable, the Court need not reach the issues of copying and substantial similarity. Two additional points are noteworthy, however. First, as the Director of Copyrights points out in his Printed Form on Useful Articles, designs such as Mr. Couture's may be protectible under patent and trademark law. This Court agrees with Whimsicality that patent or trademark protection, on the one hand, and copyright protection, on the other, are not necessarily mutually exclusive, *see, e.g., Mazer v. Stein,* 347 U.S. 201, 218–219, 74 S.Ct. 460, 470–471, 98 L.Ed. 630 (1954), but the subject articles do appear to be ones protectible, if at all, under the patent and trademark laws.

Second, features of some of Whimsicality's costumes may be copyrightable—the sculpted headpieces on the pumpkin and Hippo Ballerina, like the Compendium's examples of the carving on the chair or the pictorial design on the vase, are two of the more obvious candidates. Those are not, however, the items which Whimsicality registered with the Copyright Office, nor the articles which form the basis of its present copyright infringement claim. Accordingly, the Court takes no action with respect to them.

## II.

### *Unfair Competition Claims*

As stated at the outset, at the close of oral argument the Court indicated to the parties that it would decide the case on the merits. The focus of the parties and the court at that time was the copyright claim. Indeed, plaintiff's irreparable harm showing was premised nearly exclusively on the presumption that irreparable harm exists where copyright infringement has been shown. *E.g., Gund v. Swank, Inc.,* 673 F.Supp. 1233 (S.D.N.Y.1987).

The unfair competition claims under section 43(a) of the Lanham Act and state law, however, present a different situation. These issues received less extensive treatment in the parties' submissions before and after argument. Indeed, Whimsicality's most voiced claim is that Rubie's has failed to submit any evidence or argument to counter Whimsicality's unfair competition claims. Rubie's, by contrast, submitted a letter to the Court stating that it has not addressed the unfair competition claims for two reasons. First, Rubie's counsel apparently assumed from the remarks of this Court during oral argument that the case would turn on copyrightability and desired to spare the Court unnecessary materials. More importantly, Rubie's points out that it has not yet engaged in any discovery with respect to the Lanham Act claim.

The Court appreciates the need for discovery on the Lanham Act claim, since the determinative issues in such a claim are very fact intensive. Moreover, since the issues deal with facts that were not the focus of the oral or documentary presentations the Court is not in a position to decide the merits of the unfair competition claims at this point, and directs the parties to proceed with discovery under the supervision of the assigned magistrate.

As stated earlier, Whimsicality's application for permanent injunctive relief was largely based on its copyright claim. Although Whimsicality's submissions give some attention to the merits of the unfair competition claims, they do not do so in a

manner that would enable this Court to evaluate those claims as an independent basis for injunctive relief. In any event, since Whimsicality fuels its unfair competition argument with references to the copyrightability of the packaged articles, it is doubtful, in light of today's decision, that the unfair competition claim has sufficient merit to sustain the issuance of an injunction.

CONCLUSION

Plaintiff's application for injunctive relief is denied. Defendant's cross-motion to dismiss the copyright claim is granted. The parties are to proceed with discovery on the unfair competition claims and to appear for a status conference on October 6, 1989 at 9:30 a.m.

■ In the exercise of its discretion, given the difficulty of the copyright question presented by this case, this Court declines to award costs or attorneys' fees to the prevailing party under 17 U.S.C. § 505.

SO ORDERED.