**WHIMSICALITY, INC., Plaintiff,**

v.

**Maison Joseph BATTAT, Ltee, et al., Defendants.**

**No. 97 Civ. 7871 (DC).**

United States District Court, S.D. New York.

Nov. 23, 1998.

Kane, Dalsimer, Sullivan, Kurucz, Levy, Eisele and Richard, L.L.P. by Virginia R. Richard, New York City, for Plaintiff.

Levisohn, Lerner, Berger & Langsam by Andrew S. Langsam, New York City, for Defendants.

## MEMORANDUM DECISION

CHIN, District Judge.

In this case, plaintiff Whimsicality, Inc. ("Whimsicality") moves for leave to amend its amended complaint. Defendants Maison Joseph Battat, Ltee, Battat, Inc., and Sensational Beginnings, Inc. (collectively "Battat") move for: (1) summary judgment dismissing Whimsicality's copyright and trade dress infringement claims; and (2) an order vacating the preliminary injunction entered on consent. In an order dated September 2, 1998, I vacated the preliminary injunction, noting that a more detailed decision would follow.

For the reasons set forth below, Whimsicality's motion for leave to amend the amended complaint is denied and Battat's motion for summary judgment is granted. In addition, I explain below my reasons for vacating the preliminary injunction.

## BACKGROUND

### A. The Facts

Construing the record in the light most favorable to Whimsicality, the facts are as follows:

Since approximately 1985, Whimsicality has been in the business of designing, manufacturing, and marketing costumes for children and adults. (Am.Cmplt.¶ 9). The costumes are sold nationally in "high quality" stores and catalogs, and Whimsicality is "well-known in the industry" and among consumers for its costumes. (Id. ¶¶ 10, 14). Indeed, one of Whimsicality's buyers has described Whimsicality as " 'the best' in the costume business." (Id. ¶¶ 20–21). Some of Whimsicality's "most popular" costumes are its BEE, STEGOSAURUS, FROG, TURTLE, LADYBUG, and LION. (Id. ¶ 12). Whimsicality has copyright registrations for these six costumes as well as several others. (Id. ¶¶ 12, 16). In addition, Whimsicality has a trademark registration for the WHIMSICALITY mark that it uses on its costumes. (Id. ¶ 17).

In 1993, Whimsicality entered into a two-year license agreement with Battat (from November 1993 to October 31, 1995) pursuant to which Whimsicality licensed its costumes' copyrights to Battat, and granted Battat the right to market the costumes under the WHIMSICALITY mark. (Id. ¶¶ 18, 22, 23, 26, 27). The license was subsequently renewed for an additional year, until October 31, 1996. (Id. ¶¶ 24, 28). While the license agreement was in effect, Whimsicality's president, Pierre Couture, provided Battat with samples of Whimsicality's costume designs and patterns as well as other proprietary information concerning its business. (Id. ¶ 25).

After the parties' license agreement expired, Battat still had a large number of Whimsicality costumes in inventory, worth

approximately $500,000. (*Id.* ¶¶ 29–30). Whimsicality repeatedly requested that Battat provide it with an accounting statement as to the amount of remaining inventory and as to royalties due. Battat failed to provide Whimsicality with an accounting. (*Id.* ¶ 30). In the fall of 1997, Whimsicality learned that Battat was manufacturing "virtually identical" copies of the Whimsicality costumes identified in the amended complaint and the Whimsicality BUTTERFLY and SHARK costumes. (*Id.* ¶ 32–43; Pl.Amend.Mem. at 3–4).

## B. *Prior Proceedings Before Judge Dearie*

In 1989, Whimsicality brought suit in the Eastern District of New York against Rubie's Costume Co. for allegedly infringing six of Whimsicality's 66 "soft sculpture design" costumes. *Whimsicality, Inc. v. Rubie's Costumes Co.*, 721 F.Supp. 1566, 1568–69 (E.D.N.Y.1989) ("*Rubie's I*"). The costumes at issue were the JACK O'LANTERN, HIPPO BALLERINA, SPIDER, T-REX, BEE, and PENGUIN. Despite the fact that Whimsicality held copyright registrations for these costumes, Judge Dearie held that the costumes—considering them together as a group—were *not* copyrightable. *Rubie's I*, 721 F.Supp. at 1569–76. Judge Dearie also held that defendant was not entitled to attorney's fees. Both parties appealed.

The Second Circuit affirmed, but on the ground that Whimsicality obtained its copyright registrations by making misrepresentations to the United States Copyright Office. *Whimsicality, Inc. v. Rubie's Costume Co.*, 891 F.2d 452, 453 (2d Cir.1989) ("*Rubie's II*"). Because it held that Whimsicality misrepresented its costumes to the Copyright Office, the Second Circuit vacated "*that part of the district court's award which declined to award attorney's fees* to Rubie's" and remanded the case to the district court to determine the issue of attorney's fees in light of its opinion. *Rubie's II*, 891 F.2d at 457 (emphasis added). The Second Circuit did not vacate and/or remand that part of Judge Dearie's decision holding Whimsicality's copyrights to be unenforceable.

Whimsicality moved to vacate Judge Dearie's earlier ruling pursuant to Fed.R.Civ.P. 60(b) and requested that the court consider new evidence that would prove that Whimsicality did not perpetrate a fraud upon the Copyright Office, evidence that the Second Circuit declined to hear. *Whimsicality, Inc. v. Rubie's Costume Co.*, 836 F.Supp. 112 (E.D.N.Y.1993) ("*Rubie's III*"). Although Judge Dearie technically granted the request to vacate, it is evident that the decision concerned only the issue of whether Whimsicality defrauded the Copyright Office, and indeed the "new" evidence concerned only that issue. *See Rubie's III*, 836 F.Supp. at 115–16. In reading the entire decision, I find that there is no indication that Judge Dearie decided anything other than whether Whimsicality committed a fraud as the Second Circuit had held. Indeed, in his conclusion, Judge Dearie clearly stated that "[a]s to the inequitable conduct issue relied upon by the Court of Appeals ... this Court finds the *registrations* are enforceable." *Rubie's III*, 836 F.Supp. at 120–21.

Whimsicality knew that Judge Dearie had already concluded that its copyright registrations were valid. Even accepting the validity of the registrations, however, Judge Dearie held that the copyrights were unenforceable. *Rubie's III*, therefore, did nothing more than put Whimsicality back to the place where it was prior to the Second Circuit's decision. Grasping at straws, however, Whimsicality seized upon a sentence in *Rubie's III*, which stated that Judge Dearie "vacated" the original decision, to claim that Judge Dearie had vacated his prior, unequivocal holding as to the ultimate enforceability of Whimsicality's copyrights.

To avoid any confusion, Judge Dearie issued an order in December 1993 clarifying that his original holding, in which he dismissed Whimsicality's copyright infringement claim despite the validity of its copyright registrations, was not affected by the decision in *Rubie's III. Whimsicality, Inc. v. Rubie's Costume Co.*, No. 89 Civ. 1720, 1993 WL 661161, at * 1 (E.D.N.Y. Dec.6, 1993) ("*Rubie's IV*").

Whimsicality did not appeal. Persisting in its unreasonable and tortured reading of *Ru-*

*bie's III*, Whimsicality instead moved for reconsideration of *Rubie's IV*, the December 6, 1993 clarifying order. That motion was denied "in all respects" in a memorandum decision dated February 24, 1998. *Whimsicality, Inc. v. Rubie's Costume Co.*, No. 89 Civ. 1720, 1998 WL 178856, at *1–2 (E.D.N.Y. Feb.24, 1998) ("*Rubie's V*"). In this decision, Judge Dearie explained that *Rubie's III* returned the case to its posture at the time immediately prior to the Second Circuit's ruling and that, to the extent this was not explicit, *Rubie's IV* made this absolutely clear. Judge Dearie commented that "no reasonable reading of the Court's rulings would accommodate [Whimsicality's] far-fetched interpretation of the action taken," and that "[e]veryone *including the plaintiff,* knew that [the court never wavered on its decision that Whimsicality's copyrights were unenforceable]." *Rubie's V,* 1998 WL 178856, at *1 (emphasis added).

Again, Whimsicality did not appeal. Accordingly, Judge Dearie's decision holding the copyrights unenforceable is final.

### C. *Prior Proceedings in this Court*

Whimsicality commenced this action against Battat on October 23, 1997 asserting claims of copyright infringement, trade dress infringement, false advertising, trade dress dilution, unfair competition, and breach of contract. The original complaint alleged infringement with respect to Whimsicality's BUMBLE BEE, JACK O'LANTERN, STEGOSAURUS, FROG, TURTLE, LADYBUG, and LION costumes.

When Whimsicality filed suit, it also moved, by order to show cause, for a preliminary injunction. I held a conference in the case on October 27, 1997, and scheduled a preliminary injunction hearing for November 13, 1997. In the meantime, on November 3, 1997, Whimsicality filed an amended complaint. The amended complaint was identical to the original complaint except for the deletion of all claims relating to its JACK O'LANTERN costume. A preliminary injunction was entered on consent on November 19, 1997 enjoining Battat from filling

orders or shipping orders for the LION, BUMBLE BEE, STEGOSAURUS, FROG, LADYBUG, TURTLE, T–REX, SHARK, and BUTTERFLY costumes.

Prior to the issuance of the preliminary injunction, Whimsicality's counsel wrote a letter on November 6, 1997 to Battat's counsel advising him that Whimsicality intended to serve a second amended complaint the next day, November 7, 1997, that would add Whimsicality's T–REX, SHARK and BUTTERFLY costumes and a number of retailers (Battat's customers) who had been selling Battat's costumes. Whimsicality did not, however, serve a second amended complaint on November 7, 1997. (Langsam Aff.Ex. A). Rather, in a letter dated November 11, 1997, Whimsicality's counsel advised Battat's counsel that the time to answer *the first amended complaint* "has been extended until such time as Whimsicality, Inc. serves and files its Second Amended Complaint." (*Id.* Ex. B).

I held another conference in the case on February 23, 1998. In that conference, I set a discovery deadline of June 5, 1998. The next day, Whimsicality's counsel wrote Battat's counsel advising him that Battat was "in default" for not answering the original and first amended complaint, and warned that Whimsicality would move for default if Battat failed to answer by March 7, 1998. (*Id.* Ex. C). On March 3, 1998, Battat's counsel responded to the February 23, 1998 letter. Because Whimsicality agreed to extend the time to answer its first amended complaint until Whimsicality filed a second amended complaint, Battat requested that he be advised whether Whimsicality was in fact going to file a second amended complaint. (*Id.* Ex. D). Whimsicality's counsel responded on March 5, 1998 by stating, "[a]s to Battat's answer, please respond to the *First Amended Complaint.*" (*Id.* Ex. E (emphasis added)).

Battat answered the first amended complaint on March 31, 1998 and also asserted two counterclaims—one against Whimsicality for a declaratory judgment that its copyrights are unenforceable, and one against Couture for fraud.[1]

These motions followed.

---

1. Couture moved to dismiss the counterclaim on

June 26, 1998. The Court denied his motion in

## D. *The Parties' Motions*

### 1. *Battat*

Battat moves for summary judgment on Whimsicality's copyright infringement claim on the ground that *Rubie's* collaterally estops Whimsicality from asserting the claim. Battat also contends that summary judgment is appropriate with respect to Whimsicality's trade dress infringement claim because the costumes here are functional and, therefore, not protectable. Moreover, Battat contends that Whimsicality has failed to articulate the elements of its alleged trade dress. (*See* Defs. Reply. at 1, 2, 18). Finally, Battat moves to vacate the preliminary injunction entered on consent on the basis that Whimsicality cannot demonstrate likelihood of success on the merits of either its copyright or trademark infringement claim.

Whimsicality opposes both motions and argues that it is not collaterally estopped from asserting claims concerning costumes that were not at issue in *Rubie's;* that its costumes are copyrightable subject matter; that its trademark infringement claims have merit and are not subject to collateral estoppel based on *Rubie's;* and that Battat fails to meet the standard necessary to vacate a preliminary injunction on consent or that it is likely to prevail on the merits of all of its claims.

### 2. *Whimsicality*

Whimsicality moves for leave to amend pursuant to Fed.R.Civ.P. 15(a) to:

a.  add allegations relating to alleged infringement of its SHARK and BUTTERFLY costumes "as supplementary factual bases for plaintiff's claims of infringement, dilution, and unfair competition" (Pl.Amend.Mem. at 3);

b.  delete all of its claims relating to the BUMBLE BEE and T–REX costumes;

c.  add Battat customers who distributed and sold allegedly infringing works as defendants in the case; and

d.  expand its breach of contract claim to include allegations relating to newly discovered evidence of allegedly wrongful behavior.

an order dated July 21, 1998.

Although three out of the four proposals would actually enlarge the scope of this case, Whimsicality contends that the proposed amendments are "necessary in order to *narrow* the scope of issues for trial and to permit the assertion of all of plaintiff's claims against defendants' infringing activities in a single proceeding." (Pl.Amend.Mem. at 1 (emphasis added)). Battat opposes the motion on three grounds: (1) bad faith; (2) futility; and (3) prejudicial delay. (Defs.Amend.Opp. at 1).

## DISCUSSION

### A. *Battat's Summary Judgment Motion*

#### 1. *Legal Standards*

##### a. *Summary Judgment*

The standards governing motions for summary judgment are well-settled. Summary judgment may be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Accordingly, the Court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To create an issue for trial, there must be sufficient evidence in the record supporting a jury verdict in the nonmoving party's favor. *See id.* at 249–50, 106 S.Ct. 2505.

To defeat a motion for summary judgment, however, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. The nonmoving party may not rest upon mere "conclusory allegations or denials," but must set forth "concrete particulars" showing that a trial is needed. *National Union Fire Ins. Co. v. Deloach,* 708 F.Supp. 1371, 1379 (S.D.N.Y.1989) (quoting *R.G. Group, Inc. v.*

*Horn & Hardart Co.,* 751 F.2d 69, 77 (2d Cir.1984)).

#### b. Collateral Estoppel

■ The doctrine of collateral estoppel is designed to protect litigants "from the burden of relitigating an identical issue . . . and to promote judicial economy by preventing needless litigation." *The Irish Lesbian and Gay Organization v. Giuliani,* 143 F.3d 638, 644 (2d Cir.1998) (quoting *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)). Generally, collateral estoppel "bars a party from relitigating an issue that previously was or could have been fully adjudicated after full and fair opportunity by the parties to be heard in a prior proceeding." *Motrade v. Rizkozaan, Inc.,* No. 95 Civ. 6545, 1998 WL 108013, at *4 (S.D.N.Y. Mar.11, 1998) (citing *Metromedia Co. v. Fugazy,* 983 F.2d 350, 365 (2d Cir. 1992), *cert. denied,* 508 U.S. 952, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993); *Gelb v. Royal Globe Ins. Co.,* 798 F.2d 38, 44 (2d Cir.1986), *cert. denied,* 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987)).

■ Collateral estoppel typically comes into play when, as here, a subsequent action is based upon a different claim or demand. *Motrade,* 1998 WL 108013, at *4. In such a case, the issue is "whether the point or question presented for determination in the subsequent action is the same as that litigated and determined in the original action." *Id.* (citation omitted). The party asserting estoppel has the burden to prove that preclusive effect should be given to a prior adjudication of a particular issue. *See In re Sokol,* 113 F.3d 303, 306 (2d Cir.1997).

■ In sum, collateral estoppel applies "where (1) the issues presented are in substance the same as those resolved in the prior litigation; (2) no controlling facts or legal principles have changed significantly since the prior proceeding; and (3) no special circumstances warrant an exception to the normal rules of preclusion." *Aerogroup Int'l, Inc. v. The Shoe Show, Inc.,* 966 F.Supp. 175, 179 (W.D.N.Y.1997) (citing *Niagara Frontier Tariff Bureau, Inc. v. United States,* 826 F.2d 1186 (2d Cir.1987)).

#### c. Copyright Infringement

■ To prove copyright infringement, plaintiff must establish that it owns valid copyrights and that defendant has engaged in unauthorized copying of the copyrighted designs. *Fonar Corp. v. Domenick,* 105 F.3d 99, 104 (2d Cir.1997). Even though certificates of copyright registration are prima facie evidence that copyrights are valid (*see* 17 U.S.C. § 410(c)), a district court has discretion to make an "independent determination in an infringement action as to whether a work is copyrightable, notwithstanding the position of the Copyright Office." *DBC of New York, Inc. v. Merit Diamond Corp.,* 768 F.Supp. 414, 416 (S.D.N.Y.1991) (emphasis added) (citing *Carol Barnhart Inc. v. Economy Cover Corp.,* 773 F.2d 411, 414 (2d Cir. 1985)).

#### d. Trade Dress Infringement

■ Section 43(a) of the Lanham Act provides for a cause of action against one who "in connection with any goods . . . uses in commerce or any word, term, name, symbol, or device, or any combination thereof . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive . . . as to the origin, sponsorship, or approval of his or her goods . . . by another person." 15 U.S.C. § 1125(a). Trade dress refers to "how a product looks, its total image, or its overall appearance." *Mana Prods., Inc. v. Columbia Cosmetics Mfg., Inc.,* 65 F.3d 1063, 1068 (2d Cir.1995).

■ To prevail on a trade dress infringement claim, the plaintiff must prove two elements. First, plaintiff must prove that its trade dress is protectable by showing that the trade dress is distinctive. To do so, plaintiff must show that the dress is either "inherently distinctive" or has acquired distinctiveness through "secondary meaning." *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 769, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992); *Fun–Damental Too, Ltd. v. Gemmy Indus. Corp.,* 111 F.3d 993, 999 (2d Cir.1997). Second, plaintiff must prove infringement by showing that the defendants' trade dress has caused or is likely to cause consumer confusion. *Landscape Forms, Inc. v. Columbia Cascade Co.,* 113 F.3d 373, 377

(2d Cir.1997); *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 31 (2d Cir.1995).

■ In addition, eligibility for protection of an "identifying mark also depends on its nonfunctionality." *Mana*, 65 F.3d at 1068; *Jeffrey Milstein*, 58 F.3d at 31. Functionality is defined as "the quality essential to the product's purpose." *Id.* (citing *Two Pesos*, 505 U.S. at 775, 112 S.Ct. 2753).

### 2. *Application*
#### a. *Copyright Infringement*

■ Collateral estoppel precludes Whimsicality from asserting a copyright claim in this case. The enforceability of Whimsicality's costume copyrights has already been litigated in *Rubie's* before Judge Dearie, where Whimsicality had a full and fair opportunity to be heard. Although some of the costumes here are not the same as those in *Rubie's*, the issue presented is, in substance, precisely the same. There are no controlling facts concerning Whimsicality's costumes or legal principles that have changed since *Rubie's*. Moreover, the law upon which Whimsicality relies is the same law that it relied upon unsuccessfully in *Rubie's*.

Whimsicality has a line of approximately 66 costumes. Accepting its argument that collateral estoppel does not apply in this case would mean that, even if 65 separate courts ruled that 65 of Whimsicality's costume copyrights were unenforceable, Whimsicality would not be estopped from bringing a copyright suit on its 66th costume. This defies logic and undercuts the reason that we have a collateral estoppel doctrine in the first place—*i.e.*, "to promote judicial economy by preventing needless litigation." *Irish Lesbian and Gay Organization*, 143 F.3d at 644. Moreover, Whimsicality has failed to demonstrate how or why the costumes in this case are different than the costumes at issue in *Rubie's*. The costumes are not appreciably different. Indeed, Judge Dearie's decision applied to Whimsicality's line of costumes *generally*, and his decision estops them from relitigating the copyright issue here.

■ Even if collateral estoppel did not apply, however, I would still grant the motion for summary judgment on this claim. I agree with Judge Dearie's well-reasoned and thoughtful analysis of the enforceability of Whimsicality's costume copyrights.

The costumes at issue (including the costumes that Whimsicality wants to add) are "useful articles" as that term is defined by 17 U.S.C. § 101, and as that term is understood for copyright purposes. *Rubie's I*, 721 F.Supp. at 1571–73. Indeed, the purpose of Whimsicality's entire line of costumes is to enable the wearer of them to masquerade— to pretend to be a frog, turtle, lion, shark, or butterfly. A "useful article" may be copyrightable, but only to the extent that the article "incorporates pictorial, graphic or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article." 17 U.S.C. § 101; *see also* 17 U.S.C. § 102(a)(5); *Rubie's I*, 721 F.Supp. at 1571–73. On the record before me, Whimsicality's costumes do not meet this standard, and no reasonable juror could conclude otherwise.

Because the purpose of Whimsicality's line of costumes is to enable the wearer to masquerade, the "artistic" elements of the costumes—including elaborate headpieces, masks, facial details, attractive color combinations, special fabrics and prints—are not separable on these facts from the costumes' utilitarian aspects. *Rubie's I*, 721 F.Supp. at 1574, 1574 n. 8. Thus, as Judge Dearie held in *Rubie's I*, Whimsicality's costumes are not copyrightable despite the fact that Whimsicality has obtained copyright registrations for them from the Copyright Office. *Id.* at 1573–76; *Fonar*, 105 F.3d at 104 (presumption of validity of copyright registrations "can be overcome by evidence that the work was a non-copyrightable utilitarian article") (citation omitted).

Accordingly, Battat's motion for summary judgment dismissing Whimsicality's copyright infringement claim is granted.

#### b. *Trademark infringement*

■ Battat's motion for summary judgment with respect to Whimsicality's trade dress infringement claim is also granted. Putting aside the questions of distinctiveness,

secondary meaning and functionality, this claim fails for an even more fundamental reason: the purported trade dress to which Whimsicality claims protection is nowhere identified. The amended complaint is bereft of a single allegation as to the specific elements of the costumes' trade dress.[2] Likewise, the record on this motion for summary judgment contains no articulation of the elements of the alleged trade dress.[3]

Because there is no identifiable trade dress in this case, there is clearly no basis upon which Whimsicality can maintain an action for trade dress infringement. *See Sports Traveler, Inc. v. Advance Magazine Publishers, Inc.*, 25 F.Supp.2d 154, 161 (S.D.N.Y. 1998) ("Despite [the] mandate to focus on the overall appearance of the product, a plaintiff *must still articulate the specific elements of the trade dress* that render [it] ... unique or novel, that is, capable of being an identifier of the product's source.") (citation omitted and emphasis added); *Regal Jewelry Co. v. Kingsbridge Int'l, Inc.*, 999 F.Supp. 477, 486 (S.D.N.Y.1998) (explaining that the initial burden of proving trade dress infringement "requires the plaintiff to articulate a specific trade dress" and ultimately rejecting the trade dress claim because, among other things, plaintiff failed to consistently define its elements) (citation omitted). The cases relied upon by Whimsicality to support its conclusory allegation that its entire line of costumes are entitled to trade dress protection are inapposite. (*See* Pl.Opp. at 41). Unlike here, the plaintiffs in the cases cited by Whimsicality specifically articulated the elements of the purported trade dress or the trade dress at issue was for a single product and not an entire line of products. *See Regal*

*Jewelry*, 999 F.Supp. at 486 (discussing family trade dress protection for a line of products).

Accordingly, Battat's motion for summary judgment on Whimsicality's trade dress infringement claim is granted. For the same reasons, Whimsicality's claim under New York law for dilution of its trade dress also fails.

### B. *Battat's Motion for an Order to Vacate*

#### 1. *Legal Standards for Preliminary Injunction*

■ The standard for a preliminary injunction is as follows: the moving party must demonstrate a threat of irreparable injury and either (1) a probability of success on the merits, or (2) sufficiently serious questions going to the merits of the claims to make them a fair ground for litigation, and a balance of hardships tipping decidedly in the moving party's favor. *See, e.g., Time Warner Cable of New York City v. Bloomberg, L.P.*, 118 F.3d 917, 923 (2d Cir.1997); *Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33 (2d Cir.1995).

#### 2. *Application*

■ The primary basis for Whimsicality's preliminary injunction was the alleged infringement of its copyright and trade dress. Whimsicality's infringement claims, however, are dismissed. As to the remaining claims in the case, I find that Whimsicality has not demonstrated that it will suffer irreparable harm. Accordingly, the Court's September 2, 1998 order vacating the preliminary injunction stands.

---

2. The amended complaint conclusorily states that "Whimsicality is the exclusive owner of the distinctive trade dress of its soft sculpture costume designs. The trade dress of Whimsicality soft sculpture costumes is nonfunctional, fanciful, arbitrary and inherently distinctive." (Am. Cmplt.¶¶ 46–47). The amended complaint further alleges that "Whimsicality's costume designs were displayed in retail stores in clear plastic packages which clearly displayed Whimsicality's unique costume design, its famous mark Whimsicality and Whimsicality's statutory copyright notice." (*Id.* ¶ 50). These statements are not adequate articulations of Whimsicality's purported trade dress.

3. Again, Whimsicality merely alleges, in wholly conclusory fashion, that the "trade dress of plaintiff's LADYBUG, FROG, LION, STEGOSAURUS, TURTLE, BUTTERFLY, and SHARK costume designs, as original works of art, is arbitrary and fanciful." (Pl.Opp. at 40). Whimsicality further alleges that "plaintiff's three-dimensional costume designs, in conjunction with its sculptured headdresses with graphic appliques, are unique in the market, such that the designs indicate plaintiff as their source." (*Id.* at 41). These statements also do not suffice as articulations of the specific elements of Whimsicality's purported trade dress.

## C. *Whimsicality's Motion for Leave to Amend*

### 1. *Legal Standard for Leave to Amend*

█ Leave to amend pursuant to Rule 15(a) shall be freely granted when justice so requires, and as a general matter amendments are favored "to facilitate a proper decision on the merits." *Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *MacDraw, Inc. v. The CIT Group Equipment Financing, Inc.,* 157 F.3d 956, 962 (2d Cir.1998).

█ The decision to grant leave to amend, however, falls within the sound discretion of the trial court. *See Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971); *Austin v. Ford Models, Inc.,* 149 F.3d 148, 155 (2d Cir.1998) ("A district court's decision to deny a motion to amend a complaint is reviewed for abuse of discretion."). The district court may deny leave where it would be prejudicial to allow a plaintiff to add claims or the claims would fail to state a claim upon which relief can be granted. *See Lupowitz, Inc. v. Eclipse Holdings, Inc.,* No. 94 Civ. 2916, 1996 WL 285363, at *2 (S.D.N.Y. May 30, 1996), *aff'd,* 108 F.3d 1370 (2d Cir.1997); *Cohen v. Reed,* 868 F.Supp. 489, 497 (E.D.N.Y.1994).

### 2. *Application*

█ Whimsicality's motion for leave to amend is denied because: (1) it has acted in bad faith; (2) the proposed amendments would be futile; and (3) it would be prejudicial to allow Whimsicality to add parties and claims at this late stage in the litigation.

#### a. *Bad Faith*

In support of its motion for a preliminary injunction, Whimsicality represented to this Court that the copyrightability of its BUMBLE BEE and JACK O'LANTERN "has been determined in this Circuit." (Pl.Mem. Prelim. Inj. at 34–35). Whimsicality also represented that Judge Dearie's decision concerning its copyrights had been vacated. (*Id.*). On this motion, Whimsicality represents that *Rubie's V* was a "recent ultimate decision" in the *Rubie's* case.

Having carefully reviewed the *Rubie's* decisions, I find that these representations are not only plainly inaccurate, but also that Whimsicality has intentionally misrepresented and continues to intentionally misrepresent *Rubie's* to this Court. First, neither the Second Circuit nor any other court in this circuit has ever held that Whimsicality's costumes are copyrightable. Thus, the statement that the copyrightability of certain Whimsicality costumes "has been determined in this circuit" is false. Second, Judge Dearie did not vacate his decision concerning Whimsicality's copyrights, and Whimsicality has known this since 1993 at the latest. *See Rubie's IV; Rubie's V,* 1998 WL 178856, at *1 (where Judge Dearie points out that Whimsicality has always known that he did not vacate his original decision).[4] In light of this awareness, Whimsicality's characterization of *Rubie's V* as a "recent ultimate decision" strains credulity, and I find that the statement is intentionally misleading.

Whimsicality attempts through this motion for leave to amend to circumvent the final decision in *Rubie's.* Its contention, therefore, that the purpose of the proposed amendments is to narrow the case is yet another misrepresentation that I reject. Whimsicality has acted in bad faith and, on this basis alone, its motion for leave to amend should be denied.

#### b. *Futility*

Whimsicality's proposed amendment to delete costumes from this case is a transparent yet unavailing attempt to circumvent Judge Dearie's final decision in *Rubie's.* The record before me does not suggest anything unique or different about the costumes here (or even the costumes Whimsicality wants to

---

**4.** It is irrelevant that third parties, who were not direct participants in *Rubie's,* mistakenly cited *Rubie's III* for the proposition that it vacated Judge Dearie's prior decision concerning the enforceability of Whimsicality's copyrights. (*See* Pl.Opp. at 16). Unlike these non-participants, Whimsicality was a party to the *Rubie's* litigation, and Whimsicality knew that Judge Dearie never vacated his original holding as to the unenforceability of its copyrights.

add to the case) that would distinguish them from the costumes at issue in *Rubie's*. Even on a cursory glance, the costumes here have the same features as the costumes in *Rubie's*.

As to Whimsicality's copyright claim, therefore, amending the complaint to delete and/or add costumes is futile because its copyright claim fails regardless. This conclusion applies with equal force to Whimsicality's trade dress claim. Whimsicality has failed to articulate the elements of its purported trade dress as to the costumes it seeks to add to the case as well as the costumes named in the amended complaint.

### c. *Undue Prejudice*

In addition to bad faith and futility, I find that granting leave to amend at this stage would be unduly prejudicial and would result in undue delay. Whimsicality could have and should have sought to amend its amended complaint in November 1997 when it became aware of these other parties and when, in fact, it notified Battat that it would amend its amended complaint. It failed to do so and, because discovery is now closed in this case, I simply will not allow Whimsicality to inject additional parties and/or claims into the case.

Accordingly, Whimsicality's motion for leave to amend is denied.

### CONCLUSION

For the reasons discussed herein, Battat's motion is granted. Whimsicality's copyright infringement, trade dress infringement, and dilution claims are hereby dismissed with prejudice. For the reasons stated, the preliminary injunction was previously lifted. Whimsicality's motion for leave to amend is denied. The parties shall appear for a final conference on December 18, 1998 at 2:30 p.m. in Courtroom 11A at 500 Pearl Street.

SO ORDERED.